**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**RYAN ALVEY**                                                                          **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 4:25-CV-184-JHM**

**MATTHEW 25 AIDS SERVICES, INC.**                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ryan Alvey, proceeding *pro se*, commenced the instant action.  Because Plaintiff

is proceeding *in forma pauperis*, the Court must undertake a preliminary review of the complaint.

*See* 28 U.S.C. § 1915(e); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled*

*on other grounds by Jones v. Bock*, 594 U.S. 199 (2007).  As set forth below, the Court will allow

some claims to proceed and dismiss the remaining claims.

**I.**

Plaintiff sues Matthew 25 AIDS Services, Inc., alleging retaliation and discrimination

under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (ADA), Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title VII), the Rehabilitation Act, 29 U.S.C. § 701

*et seq*., and the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. §§ 344.040, 344.280.  (DN 1).

Plaintiff alleges that he is a gay man living with HIV and has publicly disclosed his HIV

status for advocacy purposes.  He identifies Defendant as a nonprofit HIV medical clinic and

service provider that receives federal financial assistance.  Plaintiff states that Defendant is the

sole HIV-specific service provider in Western Kentucky.  (*Id*., PageID.1).

Plaintiff alleges that, due to his disability, sexual orientation, and protected activity

described below, Defendant excluded him from employment opportunities.  Plaintiff states that

between 2022 and 2025, he applied for numerous open positions with Defendant,[1] but was either rejected or ignored, despite Defendant's significant expansion of staff during the same time period. Plaintiff claims that he was qualified for the positions sought—he possesses over 15 years of business management experience with five years in the field of HIV services and holds certification in HIV Medical Case Management. (*Id.*, PageID.2-3). Plaintiff claims that in addition to exclusion from employment, Defendant further caused him to be "blacklist[ed]" by other organizations in the HIV services network, citing two instances in which he sought employment but was not hired. (*Id.*, PageID.4).

Plaintiff alleges that beginning in late 2023, he engaged in protected activity by raising formal concerns about Defendant's "discrimination and exclusion of PLHIV [People Living with HIV/AIDS] to Defendant's leadership and Board of Directors." (*Id.*, PageID.3). He also filed complaints with the Health Resources and Services Administration on March 19, 2024; the Kentucky Commission on Human Rights on or about March 31, 2024; and the United States Department of Justice Civil Rights Division on or about October 3, 2024. Plaintiff states that he contacted the Office of the Governor of Kentucky in March of 2025, and filed an "Urgent Client Grievance" with the Kentucky Department for Public Health in December of 2025, "citing immediate safety threats due to Defendant's denial of local HIV care and treatment." (*Id.*).

Additionally, Plaintiff alleges that on January 7, 2025, he attempted to initiate medical care with Defendant but was told, via voicemail from Defendant's CEO Courtney Woolfork, that they would "not be able to provide services" at that time. (*Id.*, PageID.4). As a result, Plaintiff was required to travel approximately 90 minutes away to the nearest alternative HIV-services provider to obtain "life-saving HIV treatment[,] despite not having reliable transportation." (*Id.*). Plaintiff

---

[1] Plaintiff lists six applications he submitted in 2024 and a LinkedIn inquiry sent to Woolfork in June 2023.

claims he unsuccessfully "attempted to resolve this denial of care through emails" to Defendant in January 2025, but "Defendant refused to restore Plaintiff's access to medical services." (*Id.*). He claims that Defendant's denial of medical care occurred while the "civil rights investigations into Plaintiff's discrimination complaints were pending." (*Id.*).

Plaintiff attaches the following documents to his complaint: Determination and Notice of Rights from the U.S. Equal Employment Opportunity Commission; voicemail transcript from CEO Woolfork; grievance addressed to the Kentucky Department for Public Health; and a cease-and-desist letter addressed to Plaintiff from Defendant's legal counsel. (DNs 1-1 through 1-4).

As relief, Plaintiff seeks monetary damages and declaratory/injunctive relief. (DN 1, PageID.6-7).

## II.

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the complaint under 28 U.S.C. § 1915(e). *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). On review, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court

from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

### A. Count I—Retaliation Claims

Plaintiff alleges that Defendant, a medical services provider and prospective employer, retaliated against him by denying him medical care, excluding him from employment opportunities, and interfering with his future career prospects, based on his known protected activity of formally "reporting discrimination and exclusion of PLHIV to Defendant's leadership" and filing "complaints with governmental agencies[.]" (DN 1, PageID.5). He asserts these claims under the ADA, the Rehabilitation Act, Title VII, and Section 344.280 of the KCRA.

### 1. ADA

"The ADA generally prohibits discrimination against the disabled by employers, public entities, and by operators of public accommodations." *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (citing 42 U.S.C. §§ 12101–12213). The ADA prohibits retaliation against an individual who "has opposed any act or practice made unlawful by this chapter" or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the same. 42 U.S.C. § 12203(a). To state a claim of retaliation under the ADA, "the plaintiff must plead facts showing that (1) the plaintiff engaged in activity protected by the ADA; (2) the defendant knew of that activity; (3) the defendant took an adverse action against plaintiff; and (4) the adverse action was caused or motivated by the protected activity." *Mich. Flyer, LLC v. Wayne Cnty. Airport Auth.*, 138 F. Supp. 3d 899, 902 (E.D. Mich. 2015). A retaliatory action must be "materially adverse" meaning "enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). A complaint in a discrimination lawsuit need not contain specific facts establishing a *prima facie* case of discrimination but must contain a short and plain statement of the claim showing that the Plaintiff is entitled to relief. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (in employment discrimination case, plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation omitted). Here, Plaintiff has alleged facts to support a plausible inference that, because he engaged in protected activity, Defendant subjected

him to materially adverse actions by refusing to hire him[2] and denying him medical treatment. Upon review, the Court will allow Plaintiff's ADA retaliation claims for failure-to-hire and denial of medical services to proceed. The Court notes, however, that only the alleged adverse actions occurring after Plaintiff's protected conduct, which began in "late 2023," are actionable.[3] *See, e.g., Mishos v. McKesson Corp.*, No. 2:22-CV-01666, 2023 WL 5935804, at \*7 (S.D. Ohio Sept. 12, 2023) (plaintiff could not establish causal connection where adverse action occurred before the protected activity thus failed to state an ADA retaliation claim).

### 2. Rehabilitation Act

"[Section] 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding, including private organizations[.]" *Barnes v. Gorman*, 536 U.S. 181, 184–85 (2002). The Sixth Circuit Court of Appeals has recently held, however, that "[Section] 504 of the Rehabilitation Act does not provide a cause of action for retaliation." *Smith v. Mich. Dep't of Corr.*, 159 F.4th 1067, 1071, 1075-79 (6th Cir. 2025) (explaining that the Supreme Court has never held that any provision of the Rehabilitation Act created a private right of action for retaliation and observing that Title VII and the ADA have specific anti-retaliation provisions); *accord, Gocha v. Mich. Reprod. & IVF Ctr., P.C.*, No. 1:25-CV-665, 2025 WL 3677465,

---

[2] While courts have acknowledged post-employment blacklisting as an adverse action in Title VII retaliation cases, *see, e.g., Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013); *Patterson v. N. Cent. Tel. Co-op. Corp.*, No. 2:11-CV-00115, 2014 WL 5322937, at \*11 (M.D. Tenn. Oct. 17, 2014), Plaintiff does not supply any factual allegations to show how Defendant interfered with his employment prospects beyond reference to Defendant's "influence within the regional HIV services ecosystem." (DN 1, PageID.4). This is insufficient to meet the plausibility threshold at the pleading stage. *See Page v. Kroger Ltd. P'ship I*, No. 3-13-0237, 2013 WL 5758653, at \*4 (M.D. Tenn. Oct. 24, 2013) ("Although the Plaintiff is correct that the anti-retaliation provisions of Title VII have been construed to protect individuals from acts of retaliation against them by their former employers because of prior protected activity . . . the Plaintiff's allegations that Kroger LP I took action to retaliate against him are completely conclusory and are based upon pure speculation and conjecture on his part. Such allegations simply fail to support claims upon which relief can be granted.") (citation omitted).

[3] *See* DN 1, PageID.2-3.

6

at \*10 (W.D. Mich. Dec. 18, 2025). Accordingly, Plaintiff's retaliation claim under the Rehabilitation Act must be dismissed for failure to state a claim upon which relief may be granted.

### 3. Title VII

Title VII prohibits employers from failing or refusing to hire, discharging, or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C.A. § 2000e-2. Title VII's anti-retaliation clause makes it an unlawful employment practice "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3; *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359–60 (2013) ("In sum, Title VII defines the term 'unlawful employment practice' as discrimination on the basis of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination."). The status-based factors set forth in Title VII do not encompass age or disability. *See Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524 (6th Cir. 2006) ("Courts have explicitly held that Title VII does not cover age or disability discrimination claims.").

A *prima facie* case of Title VII retaliation is comprised of: (1) plaintiff's protected activity; (2) defendant's knowledge of the protected activity, (3) a materially adverse action taken by defendant against plaintiff, and (4) the existence of a causal connection between the protected activity and the adverse action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018). At the pleading stage, Plaintiff "does not have to establish all the elements of a *prima facie* case of retaliation to avoid dismissal;" instead, he "must only state a facially plausible claim for

relief." *Johnson v. McDonough*, No. 2:22-CV-122, 2023 WL 4409224, at *3 (W.D. Mich. May 5, 2023), *report and recommendation adopted*, 2023 WL 4229416 (W.D. Mich. June 28, 2023) (citing *Fisher v. Mich. Dep't of Corr.*, No. 1:20-CV-302, 2021 WL 5507874, at *5 (W.D. Mich. Aug. 12, 2021) (in turn citing *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 492-93 (6th Cir. 2014)).

"Protected activity refers to opposing any practice made unlawful under Title VII (discrimination based on sex, race, color, religion, or national origin), or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing pursuant to Title VII." *Gurish v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, No. 1:10CV02292, 2012 WL 3649359, at *1 (N.D. Ohio Aug. 23, 2012) (citation and quotation marks omitted).  Here, because Plaintiff's advocacy concerned disability (PLHIV), he fails to sufficiently allege protected activity covered by Title VII.  *See, e.g., Deberry v. DaVita Healthcare Partners, Inc.*, No. 215CV02301JTFTMP, 2017 WL 6811993, at *5 (W.D. Tenn. Sept. 18, 2017) ("Disability is not a protected category under Title VII. 42 U.S.C. § 2000e-2(a).  Therefore, a complaint regarding discriminatory treatment for a disability does not constitute protected activity giving rise to Title VII liability."); *Johnson*, 2023 WL 4409224, at *3 (plaintiff failed to state a claim of Title VII retaliation where alleged protected activity pertained only to "disability and reprisal," and not a covered right under Title VII).  Accordingly, Plaintiff's retaliation claim under Title VII must be dismissed for failure to state a claim upon which relief may be granted.

### 4. KCRA

The KCRA makes it an unlawful practice for an employer:

> To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin,

sex, age forty (40) and over, [or] because the person is a qualified individual with a disability . . . .

Ky. Rev. Stat. Ann. § 344.040(1)(a). Section 344.280, as relevant here, sets forth the statute's anti-retaliation provision, which prohibits a person from retaliating or discriminating "in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter[.]"  Ky. Rev. Stat. Ann. § 344.280(1).  A *prima facie* case of retaliation under this section consists of: (1) the plaintiff's protected activity; (2) defendant's knowledge of the plaintiff's protected activity; (3) an adverse employment action taken against the plaintiff; and (4) a causal link between the protected activity and the adverse action.  *Banados v. Alto-Shaam, Inc.*, No. CV 5:22-125-DCR, 2022 WL 2252750, at *2 (E.D. Ky. June 22, 2022) (citing *Benningfield v. Fields*, 584 S.W.3d 731, 738–39 (Ky. 2019)). "The liberal pleading standard applicable to civil complaints does not require that a retaliation complaint set forth specific facts establishing a *prima facie* case, but it must allege facts that establish a plausible claim to relief."  *Carrethers v. Speer*, 698 F. App'x 266, 270 (6th Cir. 2017) (citing *Keys*, 684 F.3d at 609-10); *accord, e.g.*, *Bell v. Dollar Tree, Inc.*, No. 24-13259, 2025 WL 3252656, at *11 (E.D. Mich. Nov. 21, 2025) ("At the pleading stage, Bell need not make a *prima facie* showing of retaliation, but she still must plausibly allege that Dollar Tree retaliated against her for engaging in protected conduct.").  Upon review, the Court will allow Plaintiff's retaliation claim for failure-to-hire under the KCRA to proceed.

### B.  Count II—Disability Discrimination Claims

Plaintiff alleges that he is a qualified individual with a disability (HIV).  He further alleges that Defendant, an HIV services provider, is a recipient of federal financial assistance.  Plaintiff alleges that Defendant denied him access to medical treatment on January 7, 2025, and that denial

9

was "motivated, at least in part by Plaintiff's disability and his protected advocacy." (DN 1, PageID.5). Plaintiff also alleges that Defendant, as a prospective employer, refused to hire him while hiring less-qualified, non-PLHIV candidates and systemically excluded PLHIV in staff and leadership roles. (*Id*.). He asserts these claims under the ADA, Section 504 of the Rehabilitation Act, and Section 344.040 of the KCRA.[4]

### 1. ADA

Plaintiff's claims appear to invoke two separate provisions of the ADA. In the employment context, Title I prohibits covered employers from discriminating against a "qualified individual on the basis of disability" regarding hiring, advancement, training, termination, employee compensation, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). The *prima facie* elements of a disability discrimination under the ADA requires a plaintiff to show that he or she: (1) is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Daugherty v. Sajar Plastics, Inc*., 544 F.3d 696, 703 (6th Cir. 2008) (internal quotation marks and citation omitted).

As to the claim of denial of medical services, Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person

---

[4] For the purposes of initial review, the Court assumes that Plaintiff has a "disability" as defined in the statutes under which he brings suit.

who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). This Court has previously explained:

> To establish a *prima facie* case of Title III discrimination, a plaintiff must demonstrate that (1) he has a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him on the basis of his disability in the full and equal enjoyment of that place of public accommodation.

*Snyder v. Lady Slings the Booze, LLC*, 73 F. Supp. 3d 871, 874 (W.D. Ky. 2014) (citing 42 U.S.C. § 12182(a)). As applicable to the present case, "[t]he discrimination can take the form of the denial of the opportunity to receive medical treatment, segregation unnecessary for the provision of effective medical treatment, unnecessary screening or eligibility requirements for treatment, or provision of unequal medical benefits based upon the disability." *Howe v. Hull*, 874 F. Supp. 779, 788 (N.D. Ohio 1994) (citations omitted); s*ee also Mayberry v. Von Valtier*, 843 F. Supp. 1160, 1164 (E.D. Mich. 1994) (*prima facie* case under Title III of the ADA requires that: (1) plaintiff has a disability; (2) defendant's office is a place of public accommodation; and (3) plaintiff was discriminated against by being "refused full and equal enjoyment of medical treatment because of [his] disability.").

To survive initial screening, Plaintiff need not allege facts establishing a *prima facie* case of disability discrimination; rather, he must only allege "sufficient facts, accepted as true and construed liberally, to state a claim under the ADA[.]" *Morgan v. St. Francis Hosp*., No. 19-5162, 2019 WL 5432041, at *2 (6th Cir. Oct. 3, 2019) (citing *Swierkiewicz,* 534 U.S. at 510–12). Upon review, the Court will allow Plaintiff's discrimination claims for failure-to-hire and denial of medical services under the ADA to proceed.

*2. Rehabilitation Act*

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability. . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794.  "[E]mployment discrimination complaints under the Rehabilitation Act are governed by the standards of the [ADA]."  *Spence v. Donahoe*, 515 F. App'x 561, 568 (6th Cir. 2013) (citing *Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); 29 U.S.C. § 794(d)).  Additionally, "the Rehabilitation Act frequently has been applied to facilities providing medical treatment."  *Davis v. Flexman*, 109 F. Supp. 2d 776, 785 (S.D. Ohio 1999) (collecting cases).  "Other than Section 504's 'limitation to denials of benefits "solely" by reasons of disability and its reach of only federal funded entities, the reach and requirements of [the ADA and Section 504] are precisely the same.'"  *Abeyta v. Stonecrest Med. Ctr.*, No. 3:18-CV-0386, 2018 WL 3472820, at *5 (M.D. Tenn. July 18, 2018) (quoting *S.S. v. E. Kentucky*, 532 F.3d 445, 452−53 (6th Cir. 2008)).

Thus, to establish a claim under Section 504 of the Rehabilitation Act, a plaintiff must show that he: (1) is an individual with a disability; (2) is otherwise qualified for participation in the program or activity, or for the position sought; (3) was excluded from the position sought, denied the benefits of, or subject to discrimination under the program or activity "solely by reason of [his] handicap"; and (4) the relevant program or activity receives federal financial assistance. *Abeyta*, 2018 WL 3472820, at *5 (quoting *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988) (second alteration added)).  Upon review, the Court will allow Plaintiff's

12

discrimination claims for failure-to-hire and denial of medical services under the Rehabilitation Act to proceed.[5]

### 3. KCRA

As stated earlier, the KCRA makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . because the person is a qualified individual with a disability." Ky. Rev. Stat. § 344.040(1)(a). In order to establish a *prima facie* case of discrimination based on a disability, the plaintiff must show that: (1) that he had a disability within the meaning of Ky. Rev. Stat. § 344.010(4); (2) he was otherwise qualified to perform the requirements of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment decision because of the disability. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706-07 (Ky. App. 2004). "In the pleading phase, Plaintiff is not yet required to prove a *prima facie* case," but instead "need only state facts that plausibly allege each essential element of his claim for disability discrimination under the KCRA." *Clifton v. Rural King Holdings, LLP*, No. 4:21-CV-00123-JHM, 2022 WL 1274404, at *2 (W.D. Ky. Apr. 28, 2022) (citation and internal quotation marks omitted). Upon review, the Court will allow Plaintiff's discrimination claim for failure-to-hire under the KCRA to proceed.

---

[5] The Court notes that Plaintiff's allegation that he was denied medical treatment "motivated at least in part by Plaintiff's disability . . . and protected advocacy" (DN 1, PageID.5), does not foreclose the assertion of this claim to the extent it can be read as inconsistent with the Rehabilitation Act's sole-causation standard. *See Coffman v. Robert J. Young Co.*, 871 F. Supp. 2d 703, 717 (M.D. Tenn. 2012) (plaintiff could plead alternative theories of liability under the Family Medical Leave Act and Tennessee Disability Act under Rule 8 of the Federal Rules of Civil Procedure); *accord, Lampkin v. Silver Line Bldg. Prods., LLC*, No. 3:22-CV-1810, 2025 WL 959451, at *10 (N.D. Ohio Mar. 31, 2025) ("[R]ule 8(d) permits [plaintiff] to plead FMLA retaliation and ADA retaliation as alternative claims," "even if these two retaliatory motives are inconsistent[.]"); *see generally*, Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

## IV.

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's retaliation claims brought under Title VII and the Rehabilitation Act are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

Plaintiff's retaliation claims brought under the ADA and the KCRA, and his discrimination claims under the ADA, Rehabilitation Act, and KCRA may proceed against Defendant.   In allowing these claims to continue, the Court expresses no opinion on their merits.

The Court will enter a separate Service Order to govern the continuing claims.

Date:   April 16, 2026

*Joseph H. McGinley*

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc:   Plaintiff, *pro se*
4414.015